Edward LOVSHIN, Respondent,

v.

DAVIDSON PRINTING COMPANY and American Employers Insurance Company, et al., Relators (81–880), Respondents (81–959),

and

Davidson Printing Company and Continental Casualty Company, Relators (81–959), Respondents (81–880),

Liberty Mutual Insurance Company, intervenor, Respondent.

Nos. 81–880, 81–959.

Supreme Court of Minnesota.

March 5, 1982.

---

Mathias & Brown, Duluth, for Continental Cas. Co. in No. 81–959.

Robert C. Falsani, Duluth, for Lovshin in Nos. 81–880, 81–959.

Gerald J. Brown, Duluth, for Davidson Printing Company, et al. in No. 81–880.

Donovan McCarthy, Crassweller, Larson & Magie, Duluth, for Liberty Mutual Ins. Co. in No. 81–880.

Hanft, Fride, O'Brien & Harries and Gaylord W. Swelbar, Duluth, for Davidson Printing Co., et al. in No. 81–959.

Arnold W. Larson, Duluth, for Liberty Mutual Ins. Co. in No. 81–959.

YETKA, Justice.

Relators, Davidson Printing Company and its compensation insurers on June 4, 1966, and in the period from January 7, 1968, to May 25, 1977, seek reversal of a decision of the Workers' Compensation Court of Appeals awarding compensation to employee for a 10% permanent partial disability of the back and temporary total disability pursuant to findings that employee sustained a work-related back injury on June 4, 1966, and a subsequent injury in the nature of an aggravation of his back condition by his work between January 7, 1968, and May 25, 1977; that each injury resulted in a 5% permanent partial disability of his back; and that each has contributed equally to cause his present total disability. Relators contend that employee did not sustain his burden of proof because the medical opinions essential to establish the causal relationship between the claimed injuries and his present disability were without probative value. Their contention was accepted by the compensation judge and the dissenting member of the Court of Appeals, Judge Adel, but was rejected by the majority of that court. Our review of the record convinces us that the medical opinions had an adequate factual foundation and that the decision under review must therefore be affirmed.

Employee was a compositor for Davidson from 1963 until May 25, 1977. His work required standing, bending, and lifting type galleys weighing about 40 pounds. Now 60, employee has had a variety of health problems, including anxiety and tension, since 1953, but was a faithful worker. On May 19, 1966, while placing a galley in a cabinet, he had an onset of pain in his lower back. He consulted Dr. Fisketti and was prescribed Valium. Employee then returned to work, but on June 4, 1966, had a recurrence of pain in the same area and, at this time, his legs "gave out." He was hospitalized for a week. Dr. Fisketti found no objective evidence of disc injury and the hospital records state that employee had no radiation of pain into his legs. The doctor diagnosed a recurrent lumbosacral strain and an anxiety tension state.

Following the hospitalization, employee again returned to work. On July 13, 1966, he had a recurrence of severe pain in his lower back and also had pain in his right groin. He was then seen at the Duluth Clinic by an unidentified physician who recorded that employee had again developed severe pain in his lower back and right groin. Employee told the doctor that, when these attacks occurred, his legs "seem to give way on him." The doctor recorded that employee had no sciatic pain, had probably had a nervous reaction, and had no evidence of serious injury to his back, right hip or right leg.

In June 1977, Davidson closed its composing room and employee's job was eliminated. On May 25 of that year, he had undergone surgery for a nonwork-related hernia and was not released for work by his physician until October 1977. He then registered at a State Employment Services office, but was offered no work because of a physical

history which included, besides the back injuries discussed below, the hernia condition, a heart condition and various complaints (for which employee was hospitalized or seen as an outpatient between 1953 and 1977) of nervousness, headaches, jaw pain, neck pain, loss of feeling in his arms and especially the left one, difficulty breathing, a burning sensation on the top of his head, and tingling in his feet. On January 1, 1979, employee filed a claim petition alleging that his work subsequent to June 1966 had resulted in further injury to his back by aggravation of the prior injury. He sought compensation for permanent partial and temporary total disability. Employee had received compensation for temporary total disability for a three-week period in 1966. Davidson and its insurers denied further liability. While conceding that employee may be disabled, they denied that his disability was causally related to his employment.

At the hearing on employee's claims, he testified that, following the 1966 injury, he did not have leg pain, but in the late 1960's, was aware of pressure in his lower back when standing and that he had a constant nagging pain in his back. He said he regularly took hot baths and used Ben-Gay to ease his symptoms; he also used hotpacks "where the strain felt it warranted it." Although hospitalized for other health problems in February 1971, employee did not then complain of lower back pain. From March 27, 1975, to April 9, 1975, employee was hospitalized with complaints of difficulty in urination and lower back pain. He said that, the week before this hospitalization, his lower back "was starting to bother me more than it had previously." The hospital record shows that he complained of severe pain in that area radiating also into his groin. His treating physician, Dr. Mendesh, and an orthopedist called into consultation, Dr. Stewart, felt that employee had a lumbar disc syndrome. After treatment with traction, employee's back symptoms improved and, on his discharge, he was instructed to perform Williams exercises. Employee said that, although Dr. Mendesh recommended that he work half days, he could not afford

to do so. He informed his supervisor that he thought his back condition was work-related. On his return to work, the supervisor assigned him to proofreading work more often than he had done in the past because it did not require standing.

In September 1976, employee was again hospitalized for other ailments; the hospital records contained no mention of leg pain although employee filed a claim with the health insurer in which he stated that the hospitalization was for "chest and abdominal pains—spinal pain—pain in the left leg." The hospital history also states that employee

had an episode of lumbar disc syndrome several years ago, but he has done very well and has been faithful in doing his Williams exercises and he has had no problems, occasional tightening in his lower back, but denies any real episode previously.

At this time, Dr. Mendesh's "impression" included degenerative osteoarthritis of the cervical and thoracic spine, as well as anxiety tension, but made no mention of the lower back.

■ The only medical witness was Dr. William S. Pollard, a neurosurgeon who testified that employee has a chronic disability in his lower back complicated by a sciatic neuritis of his legs, especially the left one. In his opinion, the 1966 injury was a substantial contributing cause of the current condition of employee's lower back. He also thought that the 1975 incident was an aggravation of ongoing problems in employee's back since 1966; that employee had a 5 to 10% permanent partial disability of his lower back to which each injury had contributed equally; that employee has been totally disabled since November 1, 1977; and that his lower back problem is a substantial contributing cause of that disability.

The majority of the Court of Appeals gave credence to employee's testimony and accepted Dr. Pollard's opinions. Relators, nevertheless, insist that employee did not sustain his burden of proof, pointing out that employee acknowledged that he had

suffered only one specific injury to his back, in 1966, and that, in succeeding years, he had a ˙multitude of complaints and medical treatments unrelated to his lower back condition. They suggest also that Dr. Pollard did not have the benefit of the hospital records in rendering his opinions. They urge that, as in *Zappa v. Charles Manufacturing Co.*, 260 Minn. 217, 109 N.W.2d 420 (1961), the doctor's opinions were not based upon an adequate factual foundation and thus had no evidentiary value.

Despite this claim, Dr. Pollard stated the bases for his opinions at some length. They were based on X-rays which he had taken; his physical examination of employee, which resulted in findings of a postural problem, limitation in bending and some loss of straight leg-raising which was more pronounced on the left; the doctor's review of Duluth Clinic records of the 1966 injury and the 1975 lower back difficulties; and a history from employee of back distress, including pain radiating from his back into his left leg periodically since the 1966 injury. Employee's history also included the fact that he had difficulty handling the galleys because of their weight and the awkward position in which he was required to lift them.

We have concluded that the foundation thus furnished for the doctor's opinions was adequate. Admittedly, the doctor's testimony made it clear that he understood employee to have sustained pain radiating in his left leg at the time he suffered his 1966 injury. He considered that injury "the most significant in that he had the left sciatica which takes us out of the vagaries of back strain into a nerve compression phenomenon arising in the back." The presence of that symptom was the basis for the doctor's opinion that the 1966 injury was more than the lumbrosacral strain diagnosed by Dr. Fisketti. While employee testified at the hearing that he did not have leg pain following the 1966 injury, he did testify that his legs "gave out" both on June 4, 1966, and approximately a month later. That testimony is corroborated by contemporaneous records. Employee was also seen by Dr. Bardon of the Duluth Clinic in September 1966, and that doctor recorded a complaint of pain in employee's left leg. In our view, the trier of fact could· reasonably decide that the contemporaneous recordings of symptoms affecting employee's legs, as well as his back, were accurate and supported Dr. Pollard's assumption that employee had sustained a nerve compression injury in 1966. While employee did not have symptoms of leg pain at all times, particularly in the early 1970's, Dr. Pollard testified that absence of radiating pain at some times and its recurrence at others is characteristic of a weak disc.

■ Since the Court of Appeals could, and reasonably did, credit Dr. Pollard's opinions, there is no reason to disturb the findings based on them. This being true, employee's other health problems, even if they would of themselves have resulted in total disability, do not preclude the award of compensation. *Schaefer v. Dunwoody Industrial Institute*, 280 N.W.2d 35 (Minn. 1979).

Employee is allowed attorneys' fees of $400.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.

PETERSON, Justice (dissenting).

The issue is whether claimant sustained his burden of proving that his 1966 work-related injuries were a substantial contributing factor in his present health problem. The affirmative findings by the Workers' Compensation Court of Appeals are based upon the medical opinion of Dr. William S. Pollard. That opinion evidence would support the finding if, but only if, the opinion was based upon an adequate factual foundation. *Zappa v. Charles Manufacturing Co.*, 260 Minn. 217, 109 N.W.2d 420 (1961). I think˙it was not and accordingly would reverse.

The critical foundational fact for Dr. Pollard was that employee suffered pain radiating into his left leg at the time he suffered his 1966 injury. Dr. Pollard considered that significant because the employ-

ee "had the left sciatica which takes us out of the vagaries of back strain into a nerve compression phenomenon arising in the back."

It was not established, however, that employee suffered a pain radiating into the left leg at the time of this 1966 injury. Dr. Pollard's understanding that it was so is refuted by employee's own testimony and has little or no support in his medical records.

Employee testified that his back never felt the same after the 1966 injury and that he had a constant "nagging pain." He did testify that he had pains in his left leg for periods of time in the last few years—but he denied having such pain in 1966.

The records of employee's hospitalization in June 1966 expressly disclaim the existence of pain radiating into his legs. The only mention of left leg pain appears in the letter from Dr. Bardon which summarized employee's complaints of "multiple aches and pains, a peculiar sensation in his hands, pain in the left arm and leg and a numb feeling for the past few weeks," but the doctor reported that his examination was "essentially negative, as far as any organic disease was concerned." The isolated reference to "pain in the left arm and leg and a numb feeling"—even assuming the numbness pertained to the leg—taken in the full context of the evidence is not a sufficient substantiation for Dr. Pollard's assumption that employee had in fact had pain radiating into his left leg with the onset of his back pain in 1966.

AMDAHL, Chief Justice.

I join in the dissent of Mr. Justice Peterson.

OTIS, Justice.

I join in the views expressed by Mr. Justice Peterson and Judges Boyes and Adel. The employee has failed to sustain his burden of proof by any acceptable judicial standard, and the history on which Dr. Pollard based his opinion was effectively discredited.